COMMONWEALTH *vs.* JUAN COLLADO.

Essex. December 1, 1997. - February 12, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Waiver of trial by jury, Grand jury proceedings, Trial of defendants together, Severance. *Constitutional Law,* Trial by jury, Waiver of constitutional rights, Confrontation of witnesses. *Grand Jury. Evidence,* Hearsay, Joint enterprise.

A Superior Court judge's unintentional violation of G. L. c. 263, § 6, and Mass. R. Crim. P. 19 (a), by allowing one of two codefendants to waive a jury trial and then conducting the bench trial and jury trial simultaneously, did not render the defendant's jury waiver involuntary or mandate reversal of the defendant's conviction; moreover, the error did not create a substantial risk of a miscarriage of justice. [676-679]

The record of a jury waiver colloquy in a criminal case established that the defendant's waiver was knowing and voluntary. [679]

In a criminal case in which the defendant demonstrated that a police officer's false statements to the grand jury were given in reckless disregard for the truth, the judge properly denied the defendant's motion to dismiss the indictments, where the judge found that the false testimony could not have influenced the grand jury's decision to indict the defendant. [679-680]

At the trial of indictments for trafficking in cocaine, the judge correctly allowed in evidence two extrajudicial statements of one of the two codefendants under the joint venturer exception to the hearsay rule and, where there was abundant evidence that a joint venture existed, the statements, as so admitted, did not violate the other defendant's constitutional right to confrontation. [680-682]

INDICTMENT found and returned in the Superior Court Department on December 15, 1993.

The case was heard by *Richard E. Welch III,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Annette C. Benedetto,* Assistant Attorney General, for the Commonwealth.

*Robert S. Sinsheimer* for the defendant.

ABRAMS, J. The defendant, Juan Collado, was charged with trafficking in cocaine because of a sale of cocaine to an

undercover police officer. After the jury empanelment process had begun, Collado asked to waive his right to a jury trial, but his codefendant, Severeano Tavarez, did not. Collado's request was granted after empanelment was completed but before the jurors had been sworn. The bench trial of the defendant and the jury trial of his codefendant proceeded simultaneously. Both defendants were convicted.[1] The Appeals Court vacated Collado's conviction on the ground that the jury waiver was ineffective under G. L. c. 263, § 6, and Mass. R. Crim. P. 19 (a), 378 Mass. 888 (1979).[2] *Commonwealth* v. *Collado*, 42 Mass. App. Ct. 464 (1997). We allowed the Commonwealth's application for further appellate review. We now affirm Collado's conviction.

1. *Jury waiver.* Collado contends that the waiver of his right to a jury trial was ineffective. First, he argues that the trial judge's violation of G. L. c. 263, § 6,[3] and rule 19 (a)[4] requires that we reverse his conviction. Second, he argues that the judge

---

[1] In addition, convictions against Collado and Tavarez for conspiracy to traffic in cocaine were placed on file with their consent.

[2] The Appeals Court also affirmed Tavarez's conviction; Tavarez has not sought further appellate review.

[3] General Laws c. 263, § 6, provides in part:

"Any defendant in a criminal case other than a capital case, . . . may, if he shall so elect, when called upon to plead, or later and before a jury has been impanelled to try him upon such indictment or complaint, waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk of the court. If the court consents to the waiver, he shall be tried by the court instead of by a jury, *but not, however, unless all the defendants, if there are two or more charged with related offenses, whether prosecuted under the same or different indictments or complaints shall have exercised such election before a jury has been impanelled to try any of the defendants . . .*" (emphasis supplied).

[4] Rule 19 (a) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 888 (1979), provides in part:

"A case in which the defendant has the right to be tried by a jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and files the waiver with the clerk, in which instance he shall be. tried by the court instead of by a jury. *If there is more than one defendant, all must waive the right to trial by jury, and if they do not so waive, there must be a jury trial unless the court in its discretion severs the cases*" (emphasis supplied).

failed to conduct an adequate colloquy, as required by *Ciummei* v. *Commonwealth*, 378 Mass. 504 (1979), to ensure that the waiver was knowing, voluntary, and intelligent.

a. There is no dispute that the jury waiver in this case violated both G. L. c. 263, § 6, and rule 19 (a). In a criminal trial with multiple defendants, all defendants must be tried by a jury, or all by the judge, or else the judge must sever the cases. Moreover, under G. L. c. 263, § 6, a defendant wishing to waive a jury trial must do so before the jurors are empanelled. Apparently unaware of the statute and rule, the judge permitted the hybrid trial of Collado and Tavarez to proceed. This was an error as to both the nature of the trial and the timing of the waiver.

Nonetheless, we do not believe that this error mandates that we reverse Collado's conviction. We believe that G. L. c. 263, § 6, and rule 19 (a) are procedural in nature. The Superior Court clearly had jurisdiction to hold a jury-waived trial in this matter. Prior to the amendment of G. L. c. 263, § 6, by St. 1929, c. 185, § 1, to include the jury waiver provisions, this court said that the courts lacked jurisdiction to hear jury-waived criminal trials. See *Commonwealth* v. *Rowe*, 257 Mass. 172, 180-181 (1926). The *Rowe* court did not deny that criminal defendants possessed a right to waive a jury trial. See *id.* at 175-176. It reasoned that the jury was "a constituent part of the tribunal for the determination of disputed facts whenever a defendant pleaded not guilty to an indictment," and that the Legislature, by including no provision for a jury-waived trial, imposed a "specific limitation of [the Superior Court's] powers by statute." *Id.* at 180. After the addition of the 1929 amendment, however, "[t]he jury for all except capital cases was no longer a 'constituent part' of that tribunal. . . . The 'specific limitation of its powers by statute' had been removed except in capital cases." *Gallo* v. *Commonwealth*, 343 Mass. 397, 401 (1961), quoting *Rowe*, *supra* at 180. The language at the end of § 6 that "the court shall have jurisdiction," like similar language in the statute addressed in *Gallo*, strikes us as having been included "in an abundance of caution." *Gallo*, *supra* at 402. We think the reasoning of *Rowe* — that defendants possess a right (albeit a nonconstitutional one) to have jury-waived trials, but the courts lack power to hear jury-waived trials —

whatever its validity at the time, has no validity after the 1929 amendment.

The "all or none" provisions in both § 6 and rule 19 (a) were meant to "avoid two trials where one codefendant wanted a bench trial and another wanted a jury trial." *Commonwealth* v. *Greene*, 400 Mass. 144, 148 (1987), citing *Commonwealth* v. *Boris*, 317 Mass. 309, 311 (1944). The jury waiver provisions thus do not vest any personal right in criminal defendants, but reduce the strain on court resources. We hesitate to reverse a judge for his unintentional violation of a rule that was not enacted for the benefit of those in Collado's position. We conclude that G. L. c. 263, § 6, and rule 19 (a) merely prescribe procedures to be followed if a defendant or a codefendant wishes to waive the right to a jury trial. Because the jury-waiver procedures set out in the statute and the rule do not limit the court's power to hear the case, they do not give rise to a per se rule mandating reversal. See *Commonwealth* v. *Dailey*, 12 Cush. 80, 83 (1853) (defendant "may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court").

Collado cites *Commonwealth* v. *Pavao*, 423 Mass. 798 (1996), in support of his position that a defective jury waiver requires reversal. That case is inapplicable. In *Pavao*, we held that the failure to conduct a *Ciummei* colloquy mandated reversal and that a harmless error analysis was inappropriate. *Pavao*, *supra* at 800-804. Our concern in *Pavao* was the voluntariness of the jury waiver. The fact that a jury waiver violates a procedural rule, as it did in Collado's case, does not render it involuntary. We conclude that in noncapital cases, an unintentional violation of either G. L. c. 263, § 6, or rule 19 (a) will result in reversal only if the defendant can show a substantial risk of a miscarriage of justice.[5]

Collado has not done so. Collado points to one possible prejudicial effect: the judge's access to evidence not properly admissible against him. This risk, however, exists in any bench trial, for whenever a party makes an offer of proof, the judge must pass on the admissibility of the evidence, and if it is inadmissible, ignore it. The law presumes that a judge is able to

---

[5]We use the standard of review for unobjected-to error because every jury waiver is initiated by the defendant's own motion. We have difficulty imagining that a defendant would ask to waive a jury trial and, on having the request granted, immediately object pursuant to G. L. c. 263, § 6, or rule 19 (a).

sort out the evidence and rely only on that which is admissible. See *Berlandi* v. *Commonwealth*, 314 Mass. 424, 453-454 (1943). Collado has shown nothing to disturb this presumption. We conclude that the hybrid trial in this case did not create a substantial risk of a miscarriage of justice.

b. Collado next contends that the colloquy was inadequate. He argues that because the judge did not ask whether he understood that the fact finder in his case would also make rulings of law and hear all the evidence in Tavarez's case or that there would be no instructions of law in his own case, the record does not establish that the waiver was knowing and voluntary. We reject this argument.

The colloquy establishes that Collado understood that he had a constitutional right to a jury trial; that the judge alone would decide his guilt or innocence; that he was waiving the rights to unanimity and challenges[6]; that Collado was not coerced or induced into relinquishing his rights; that he had discussed the decision with his counsel; and that he was not under the influence of drugs, alcohol, or mental illness. The colloquy was more than adequate to convince the judge that Collado was waiving his rights intelligently and voluntarily. This is all that is required. See *Commonwealth* v. *Abreu*, 391 Mass. 777 (1984). To require that the judge include the rights of which Collado asserts he was unaware is unnecessary and would invite further challenges insisting that heretofore overlooked rights concomitant to a jury trial be included. We conclude that Collado effectively waived his right to a jury trial.

2. *False grand jury testimony.* Before trial, Collado moved to dismiss the indictments because of false statements made to the grand jury. The police officer who made the undercover cocaine purchase made two false statements to the grand jury: (1) that Tavarez expected the cocaine to come from New York, and (2) that Collado had been seen carrying the black bag in which the cocaine was transported. In fact, Tavarez had not said anything to the officer about where the cocaine would originate, and it was Tavarez who had been observed actually carrying the black bag while Collado accompanied him. As to the "New York" statement, the judge found that this was a reasonable inference from facts within the officer's knowledge that much cocaine in

---

[6]Collado's apparent waiver of his right to challenge notwithstanding, he had already exercised his peremptory challenges before waiving his right to a jury trial.

Lynn originated in New York, that the drive from New York to Lynn took about four hours, and that, according to Tavarez, the cocaine would take about four hours to arrive.[7] As to the "black bag" statement, the judge found that it was false and that the officer's failure to review his accurate affidavit prior to appearing before the grand jury amounted to recklessness. Nonetheless, he denied the motion to dismiss because in his view, the false statements were not material to the grand jury's ultimate conclusion that probable cause existed to return the indictments. Collado appeals, arguing that the false statements impaired the integrity of the grand jury either per se or because apart from them, there was not enough evidence to support the indictments. We reject both contentions.

In a claim that false testimony was presented to a grand jury, the defendant bears the heavy burden of proving that "(1) the evidence was given to the grand jury knowingly or with reckless disregard for the truth and for the purpose of obtaining an indictment, and (2) that the evidence probably influenced the grand jury's determination to indict the defendant." *Commonwealth* v. *Kelcourse*, 404 Mass. 466, 468 (1989), citing *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986). The judge's finding that the officer testified falsely and with reckless disregard for the truth satisfies the first requirement. The judge's further finding, which is supported by his recitation of incontrovertibly truthful grand jury testimony, that the false testimony could not have influenced the grand jury's decision negates the second requirement.[8] The judge properly denied the motion to dismiss the indictment.

3. *Admission of Tavarez's statements.* The judge allowed the officer to testify to two extrajudicial statements by Tavarez,

[7]This is tantamount to a finding that the New York statement was in fact true. Because the judge did not rely on this statement in evaluating whether probable cause existed to indict Collado, we do not disturb this conclusion. For simplicity, we refer to the New York and black bag statements collectively as "the false statements."

[8]Collado cites several cases that he argues require us to find that the recited testimony does not amount to probable cause. See, e.g., *Commonwealth* v. *Lombard*, 37 Mass. App. Ct. 43 (1994), *S.C.*, 419 Mass. 585 (1995); *Commonwealth* v. *Meehan*, 33 Mass. App. Ct. 262 (1992); *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435 (1991); *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408 (1986). These cases, however, dealt with proof beyond a reasonable doubt that a defendant had committed a crime. They are inapposite for the much lower standard of probable cause to indict.

namely, that "his guy [Collado] had arrived and . . . he just had to go meet him," and that Tavarez was in a nearby laundromat and needed to be let into the apartment where the sale eventually took place. Collado argues that these statements were admitted in violation of *Bruton* v. *United States*, 391 U.S. 123, 135-136 (1968), in which the Supreme Court of the United States held that where a codefendant does not testify, admission of the codefendant's out-of-court statements inculpating the defendant violates the defendant's constitutional right to confrontation, even with a limiting instruction. He further argues that even if there was no constitutional violation, the statements were inadmissible hearsay. The same analysis disposes of both contentions.

We have stated that "[a]ccording to *Bruton*, severance is constitutionally required where: a codefendant's extrajudicial statements are offered in evidence at a joint trial; the statements are 'clearly inadmissible' as against the defendant; the codefendant does not testify; and, finally, there is a substantial possibility that, in determining the defendant's guilt, the jury relied on the codefendant's 'powerfully incriminating extrajudicial statements' notwithstanding any limiting instructions from the judge." *Commonwealth* v. *Adams*, 416 Mass. 55, 58 (1993), quoting *Commonwealth* v. *Pontes*, 402 Mass. 311, 314 (1988). Collado's argument fails because the statements are not "clearly inadmissible." They fall under the joint venturer exception to the hearsay rule. Under this exception, statements by a joint venturer are admissible against a defendant when the statements were made "during the pendency of the cooperative effort and in furtherance of its goal."[9] *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 543 (1990), quoting *Commonwealth* v. *White*, 370 Mass. 703, 708-709 (1976). The joint venture provides a commonality of interests because of which the statements bear indicia of reliability. *Commonwealth* v. *Colon-Cruz, supra*. The admission of statements by a joint venturer also does not violate a defendant's right to confrontation. See *Bourjaily* v. *United States*, 483 U.S. 171, 182-183 (1987).

A codefendant's statements cannot be admitted unless, as a preliminary matter, the Commonwealth shows by evidence other than the statements themselves that a joint venture existed. *Commonwealth* v. *Colon-Cruz, supra*. That this is a "prelimi-

---

[9]Collado does not argue that, if there was a joint venture, the statements were not made during the pendency and in furtherance thereof.

nary" matter, however, does not require that evidence demonstrating a joint venture be introduced before the codefendant's statements are. *Id.* In a jury trial, it is sufficient that the statements be admitted subject to a motion to strike. *Id.* at 543-544. In a bench trial, the judge may simply determine whether the joint venture is established and, if not, disregard the statements as against the defendant.

There was abundant evidence apart from Tavarez's statements that a joint venture existed. The judge properly found that Collado and Tavarez were engaged in a joint venture and that Tavarez's statements were made in furtherance thereof. Under both the joint venture exception to the hearsay rule and the *Bruton* rule, the statements were admissible against Collado.

*Judgment affirmed.*